702 F.Supp. 231 (1988)
Mamie LEWIS, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 88-385C(1).
United States District Court, E.D. Missouri, E.D.
December 29, 1988.
*232 W. Bevis Schock, St. Louis, Mo., for plaintiff.
Henry Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff Mamie Lewis brought this negligence action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, to recover damages for injuries sustained when she slipped and fell outside of the federal penitentiary in Terre Haute, Indiana. Following bifurcation of the liability and damages portions of this case, the liability issue was tried before the Court without a jury. At the close of plaintiff's case, defendant moved for judgment in its favor on the ground that plaintiff failed to prove actionable legal liability against defendant. Defendant renewed its motion at the close of all evidence.
The Court construes defendant's motion as a motion for dismissal pursuant to Fed.R.Civ.P. 41(b). In a non-jury case, the Court may dismiss the plaintiff's case at the close of plaintiff's evidence if plaintiff fails to show any right to relief under the facts and applicable law. Fed.R.Civ.P. 41(b). Although a Rule 41(b) motion in a non-jury trial is similar to a motion for a directed verdict under Rule 50(a) in a jury trial, see C. Wright & A. Miller, Federal Practice and Procedure § 2371 (1971), the Court's role in each case is "fundamentally different." Continental Casualty Co. v. DLH Services, Inc., 752 F.2d 353, 355 (8th Cir.1985). The Court may not decide the facts on a motion for a directed verdict, however, on Rule 41(b) motion, the Court "is free to assess the credibility of witnesses and the evidence" in determining whether plaintiff has made out a case. Id. at 356.

Findings of Fact
On December 5, 1986, plaintiff Mamie Lewis went to the United States Penitentiary in Terre Haute, Indiana, to visit her husband who was an inmate there. The United States Penitentiary is owned and operated by the Department of Justice *233 which is an agency of the United States. Plaintiff was accompanied by her two children, a friend Sharon Hawkins, and a cousin-in-law Barbara Jordan and her child. The group arrived at the penitentiary at 8:00 a.m. when visiting hours began. They entered the premises by walking through the main gate and up the front driveway. Plaintiff had used this route to enter the building once before on the previous day. According to plaintiff, it was a cold, sunny day, but there was no ice or water on the ground when she entered the building.
Plaintiff and her companions remained in the penitentiary until 3:00 p.m. when visiting hours ended. While plaintiff and her children were in the penitentiary visiting plaintiff's husband, an inmate hosed down the driveway which caused ice to form.
When plaintiff left the penitentiary at 3:00 p.m., the temperature was below freezing. Plaintiff led the others down the driveway toward the main gate. When plaintiff was near the main gate she slipped and fell on a patch of ice, which was approximately 10 to 20 feet long, and landed on her back. Although nothing was obstructing her view, plaintiff did not see the ice before the fall because she was talking and was looking straight ahead. However, one of plaintiff's companions, Sharon Hawkins, saw the wet spot from 10 to 20 feet away. After plaintiff fell, she realized it was ice because she could feel the ice beneath her back.
After her fall, plaintiff was transported by ambulance to the Terre Haute Regional Hospital. Plaintiff was examined and x-rays were taken in the emergency room. After the x-rays revealed no fractures or dislocations, plaintiff was given a prescription for pain medicine and was released. Plaintiff then walked out of the hospital and her friend drove her and the others back to St. Louis in plaintiff's car. Upon her return to St. Louis, plaintiff received follow-up treatment by a chiropractor.

Conclusions of Law
This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1346, 2671-2680. Under the FTCA, the Court applies the law of the state where the act or omission occurred to determine the government's liability. 28 U.S.C. § 1346(b); Mandel v. United States, 793 F.2d 964, 968 (8th Cir.1986). Therefore, the substantive law of Indiana governs this case.
To recover in a negligence action under Indiana law, plaintiff must establish that 1) defendant owed plaintiff a duty of care; 2) defendant breached the requisite duty; and 3) plaintiff's injury was proximately caused by defendant's breach. Poe v. Tate, 161 Ind.App. 212, 315 N.E.2d 392, 295 (1974). In premise liability cases, the landowner's duty of care under Indiana law depends upon whether the person entering the premises is an invitee, licensee, or trespasser. City of Bloomington v. Kuruzovich, 517 N.E.2d 408, 412 (Ind.App.1987). In the present case, plaintiff could be classified as a licensee or invitee.
A licensee is a person who "enters the premises for [her] own convenience, curiosity or entertainment." Fleischer v. Hebrew Orthodox Congregation, 504 N.E.2d 320, 322 (Ind.App.1987). A social guest is a licensee under Indiana law. Xaver v. Blazak, 181 Ind.App. 245, 391 N.E.2d 653, 655 (1979). A landowner owes a licensee only a duty to "refrain from willfully or wantonly injuring the licensee ... and to warn the licensee of any latent danger on the premises of which the owner has knowledge." Wright v. International Harvester Co., 528 N.E.2d 837, 839 (Ind. App.1988) (citations omitted). A licensee may not recover for injuries caused by the owner's negligence in maintaining the premises. Fleischer, 504 N.E.2d at 322. An invitee, on the other hand, may recover for injuries caused by the owner's negligence. Id.
Although many Indiana cases have focused upon business invitees and have defined an invitee as one who enters the premises to transact business or to otherwise benefit the landowner, see e.g. Mullins v. Easton, 176 Ind.App. 590, 376 N.E.2d 1178 (1978); Hollowell v. Greenfield, 142 Ind.App. 344, 216 N.E.2d 537 (1966); Standard Oil Co. of Indiana, Inc. v. Scoville, 132 Ind.App. 521, 175 N.E.2d 711 (1961); recently, the Indiana Court of *234 Appeals expanded the definition of invitee to encompass public invitees as well as business invitees. See Fleischer, 504 N.E. 2d at 323-24 (person attending religious services is a public invitee); Kuruzovich, 517 N.E.2d at 413 (visitor to city park is a public invitee). "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Fleischer, 504 N.E.2d at 322 (quoting Restatement (Second) of Torts § 322(2) (1965)).
No Indiana decision addresses the status of a prison visitor and the Court's extensive research did not reveal any case addressing the issue of whether a prison visitor is an invitee or licensee. Therefore, the Court must determine how the highest Indiana court would rule if presented with this issue.
Defendant argues that plaintiff should be classified as a licensee because plaintiff came on the premises for her own convenience or entertainment as a social guest of her husband, and was not invited by the prison. An invitation is essential to the invitee status. Restatement (Second) of Torts § 331, Comment b (1965). While mere permission or passive tolerance of a visit is not sufficient to constitute an invitation, a landowner's words or conduct, which lead a visitor to believe that his or her entry is desired, may constitute an invitation. Id.; Hammond v. Allegretti, 262 Ind. 82, 311 N.E.2d 821, 824-25 (1974). The Court concludes that defendant, by opening the penitentiary to visitors during certain visiting hours, impliedly invites or encourages family members of inmates to enter the premises, and thus, assumes the obligation of keeping the premises reasonably safe for visitors. Plaintiff, by entering the premises for the purpose for which the facility is held open, was a public invitee.
To determine whether an landowner has breached its duty of care to an invitee, the Indiana courts apply the Restatement (Second) of Torts § 343 (1965):
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against danger.
Hammond, 311 N.E.2d at 824. With respect to ice and snow conditions, the Indiana courts have held that a landowner may be liable to an invitee for injuries caused by natural as well as artificial accumulation of ice and snow. Id. at 828; Poe, 161 Ind.App. 212, 315 N.E.2d 392, 394 (1974).
In the present case, defendant created the formation of ice by hosing down the driveway in freezing cold weather. Defendant knew that visitors would use the driveway to exit from the penitentiary and should have expected that visitors might not discover the patch of ice. Defendant's failure to salt the driveway, to post warnings that the driveway recently had been washed, or to otherwise warn invitees of the danger was negligent and was a proximate of plaintiff's injuries.
Defendant argues that even if it was negligent, plaintiff's own lack of due care also proximately caused her injuries. A person is expected to make "reasonable use of his faculties and senses" to discover dangerous conditions to which he may be exposed. Howard v. H.J. Ricks Construction Co., Inc., 509 N.E.2d 201, 206 (Ind. App.1987). A plaintiff who "fails to recognize an obvious risk or danger" is contributorily negligent. Id.
Contributory negligence is no longer a complete bar to a negligence action in Indiana. The Indiana Comparative Fault Act, I.C. §§ 34-4-33-1 through 33-14, which became effective January 1, 1985, requires the Court to examine the relative fault of the plaintiff and defendant to determine *235 the percentage of fault attributable to each party.[1]
In this case, plaintiff failed to watch where she was going and failed to see the patch of ice despite the lack of obstructions and clear view. Moreover, on a winter day when the temperature was below freezing, plaintiff should have realized that the formation of ice was a possibility and should have proceeded with greater caution. Thus, plaintiff was negligent and her negligence was a proximate cause of her injuries.
The Court finds, under the facts and circumstances of this case, that plaintiff was 40% at fault and defendant was 60% at fault. The computation of plaintiff's damages shall be determined at the completion of the damages phase of plaintiff's trial which will be set for trial on this Court's docket of February 6, 1989.
Accordingly, defendant's motions for dismissal be and are denied.
NOTES
[1] Under Indiana's "modified" comparative fault system, a plaintiff's contributory negligence does not bar recovery completely but merely reduces the amount of damages the plaintiff may recover in proportion to her degree of fault as long as the plaintiff's negligence does not exceed 50% of the total fault. Walters v. Dean, 497 N.E.2d 247, 254 (Ind.App.1986).

Although the Indiana Comparative Fault Act contains a governmental entity exception, I.C. § 34-4-33-8, which precludes application of the comparative fault statute to governmental entities, this exemption does not apply to suits against the federal government under the FTCA because the FTCA imposes liability upon the federal government in the same manner and to the same extent that liability would be imposed upon a private individual. 28 U.S.C. §§ 1346(b), 2674; Wright v. United States, 719 F.2d 1032, 1034-35 (9th Cir.1983); Johns-Manville Sales Corp. v. United States, 622 F.Supp. 443, 445 and n. 4 (N.D.Cal.1985).